# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOAN M. CICCHIELLO,** | : | |
| | : | **Civil No. 4:12-CV-2066** |
| **Plaintiff** | : | |
| | : | **(Judge Brann)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ANTHONY ROSINI, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This is a *pro se* civil rights action brought by the plaintiff, Joan Cicchiello, through the filing of a complaint  on October 15, 2012. (Doc. 1.) In her *pro se* complaint, Cicchiello named two Northumberland County Judges, the Northumberland County District Attorney, a Northumberland County Assistant District Attorney, and several Northumberland County probation officers as defendants.

Cicchiello's complaint arises out of a state prosecution of the plaintiff, a prosecution which resulted in her conviction, and a prosecution which the plaintiff is actively contesting in state court. Thus, Cicchiello's complaint recited that she was convicted of false swearing and making false reports to police. (Id.) Cicchiello was sentenced to 12 months probation as a result of this conviction, and was subsequently the subject of state probation revocation proceedings in 2011 and 2012. According to

Cicchiello, she is actively seeking post-conviction relief in state court challenging this conviction and these revocation proceedings.

Alleging that her civil rights have been violated throughout this state criminal process and that she has been subjected to false arrest and malicious prosecution by local authorities, Cicchiello has now filed this lawsuit, which seeks damages and injunctive relief from the judges, prosecutors and probation officers involved in her state criminal case. (Id.) Furthermore, notwithstanding the fact that she is pursuing post-conviction litigation of these claims in state court, on November 15, 2012, Cicchiello supplemented this prayer for relief in this federal civil rights lawsuit by filing a pleading, styled "Motion to Stay Probation", which invited this court to enjoin the enforcement of state criminal sentence imposed against her. (Doc. 10.)

As a *pro se* litigant, Cicchiello was advised by this court at this outset of this lawsuit of her responsibilities in this litigation. Thus, on October 15, 2012, the district court entered its Standing Practice Order in this case, an order which informed the plaintiff of her responsibility to reply to defense motions, and warned Cicchiello in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it

meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 3, p.2.)

On October 29, 2012, the District Attorney and Assistant District Attorney named as defendants in Cicchiello's complaint moved to dismiss this complaint. (Doc. 8 and 9.) Despite the explicit notice she had received from this court in its Standing Practice Order concerning her obligation to respond to defense motions, Cicchiello has never responded to this motion to dismiss, and the time for a response has now long since lapsed.

On December 5, 2012, a second motion to dismiss was filed by additional defendants. (Docs. 12 and 13.) Cicchiello has now compounded her non-compliance with this court's Standing Practice Order by failing to respond to this second dispositive motion, and the time for responding to this motion has also now passed. Therefore, in the absence of any timely response by Cicchiello, we will deem both of the motions to dismiss to be ripe for resolution.

For the reasons set forth below, we recommend that these motions to dismiss be granted.

## II.    Discussion

### A.    Under The Rules of This Court These Motions to Dismiss Should Be Deemed Unopposed and Granted.

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in these motions to dismiss, since Cicchiello has failed to timely oppose the motions, or otherwise litigate this case. This procedural default completely frustrates and impedes efforts to resolve this matter in a timely and fair fashion, and under the rules of this court warrants dismissal of the action, since  Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to  motions and provides that

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' <u>Stackhouse v.</u>

*Mazurkiewicz*, 951 F.2d 29, 30 (1991)." <u>Williams v. Lebanon Farms Disposal, Inc.</u>,

No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case Cicchiello

has not complied with the local rules, or this Court's Standing Practice Order, by filing

a timely response to these motions. Therefore, these repeated procedural defaults by

the plaintiff compel the court to consider:

> [A] basic truth: we must remain mindful of the fact that "the Federal
> Rules are meant to be applied in such a way as to promote justice. *See*
> Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve
> cases on their merits whenever possible. However, justice also requires
> that the merits of a particular dispute be placed before the court in a
> timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157
> F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of

our legal system. A failure on our part to enforce compliance with the rules, and

impose the sanctions mandated by those rules when the rules are repeatedly breached,

"would actually violate the dual mandate which guides this Court and motivates our

system of justice: 'that courts should strive to resolve cases on their merits whenever

possible [but that] justice also requires that the merits of a particular dispute be placed

before the court in a timely fashion'." <u>Id.</u> Therefore, we are obliged to ensure that one

party's refusal to comply with the rules does not lead to an unjustified prejudice to

those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the motions to dismiss filed by the defendants in this case. These failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose these motions to dismiss.

**B.    Dismissal of this Case Is Also Warranted Under Rule 41**.

Beyond the requirements imposed by the local rules of this court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or

defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, 435 F. App'x 113, 116 (3d Cir. 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)) Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus,  538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus,  538 F.3d at 263. Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction. See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the <u>Poulis</u> factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first <u>Poulis</u> factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the Plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the opposing party–is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Id</u>. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. <u>Id.</u>; <u>see also Ware v. Rodale Press, Inc.</u>, 322 F.3d 218, 222 (3d Cir.2003); <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222.

<u>Briscoe v. Klaus</u>, 538 F.3d at 259-60.

In this case the Plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action. In such instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506 (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate. In this regard, courts agree that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted). Here, over the span of months, the plaintiff has failed to timely file pleadings, and has not complied with orders of the Court. Thus, Cicchiello's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case. In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund</u>, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the plaintiff has failed to comply with instructions of the Court directing the plaintiff to take specific actions in this case, and has violated the local rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. <u>See, e.g.,</u> <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our Standing Practice Order, we have endeavored to use lesser measures to secure compliance, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores her

responsibilities as a litigant. Since lesser steps have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since Cicchiello is now wholly non-compliant with her obligations as a litigant. The plaintiff cannot refuse to address the merits of her claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him. Furthermore, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, Cicchiello's claims clearly fail on their merits, yet another factor which favors dismissal of this action. The legal flaws inherent in these claims are discussed separately below.

**C.     Cicchiello's Claims Fail on Their Merits**

The defendants have moved to dismiss this complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a

court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these legal benchmarks, Cicchiello's *pro se* complaint runs afoul of several threshold legal obstacles, obstacles which combine to compel dismissal of this complaint in its current form. The flaws in this *pro se* complaint are discussed separately below.

At the outset, this Court should abstain from addressing the plaintiff's requests for injunctive relief while Cicchiello is still being actively litigating this matter in the

state courts. To the extent that Cicchiello invites this Court to enjoin a pending state criminal case, this *pro se* pleading runs afoul of a settled tenet of federal law, the Younger abstention doctrine. The Younger abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: "Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding. See Younger v. Harris, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.')." Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application. As the United States Court of Appeals for the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important

state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.


Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state criminal cases. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In this case, the plaintiff's *pro se* complaint reveals that all of the legal prerequisites for Younger abstention are present here. First, it is evident that there are on-going state criminal proceedings in this case. Second, it is also apparent that those proceedings afford Cicchiello a full and fair opportunity to litigate the issues raised in this lawsuit in her pending state cases. Finally, it is clear that the state proceedings implicate important state interests, since these matters involve state criminal law enforcement, an issue of paramount importance to the state. See, e.g., Lui v.

Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). However, given the important state interest in enforcement of its criminal laws, and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

Further, to the extent that the plaintiff seeks damages from state officials arising out of her prosecution or probation revocation, this complaint fails because it rests on a fatally flawed legal premise. At bottom, the plaintiff seeks to bring a civil rights action for damages against a host of state officials premised on claims of misconduct in her state case, a case that resulted in a conviction which has not otherwise been set aside or overturned.

This she cannot do. Quite the contrary, it is well-settled that an essential element of a civil rights action in this particular setting is that the underlying criminal case must

have been terminated in favor of the civil rights claimant. Therefore, where, as here, the civil rights plaintiff brings a claim based upon a state case that resulted in a conviction, the plaintiff's claim fails as a matter of law. The United States Court of Appeals for the Third Circuit has aptly observed in this regard:

> The Supreme Court has "repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability." <u>Heck v. Humphrey</u>, 512 U.S. 477, 483(1994) (<u>quoting Memphis Community School Dist. v. Stachura</u>, 477 U.S. 299, 305(1986) (internal quotation marks omitted)). Given this close relation between § 1983 and tort liability, the Supreme Court has said that the common law of torts, "defining the elements of damages and the prerequisites for their recovery, provide[s] the appropriate starting point for inquiry under § 1983 as well." <u>Heck,</u> 512 U.S. at 483( <u>quoting Carey v. Piphus</u>, 435 U.S. 247, 257-58,(1978)). The Supreme Court applied this rule in <u>Heck</u> to an inmate's § 1983 suit, which alleged that county prosecutors and a state police officer destroyed evidence, used an unlawful voice identification procedure, and engaged in other misconduct. In deciding whether the inmate could state a claim for those alleged violations, the Supreme Court asked what common-law cause of action was the closest to the inmate's claim and concluded that "malicious prosecution provides the closest analogy ... because unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process." <u>Heck</u>, 512 U.S. at 484. Looking to the elements of malicious prosecution, the Court held that the inmate's claim could not proceed because one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor, and the inmate in <u>Heck</u> had not successfully challenged his criminal conviction. <u>Id</u>.

<u>Hector v. Watt</u>, 235 F.3d 154, 155-156 (3d Cir. 2000).

In this case it is evident from the complaint that the plaintiff's prior state criminal case did not terminate favorably for her, since she admits that she was

convicted in this state case. Since "one requirement of malicious prosecution is that the prior criminal proceedings must have terminated in the plaintiff's favor", id., the immutable fact of Cicchiello's conviction presently defeats any federal civil rights claims for damages based upon the conduct of this state case, and compels dismissal of these claims. In short, this complaint is based upon the fundamentally flawed legal premise that Cicchiello can sue state officials for civil rights violations arising out of her state prosecution even though she stands convicted of the crimes charged against her. Since this premise is simply incorrect, the complaint fails as a matter of law.

Furthermore, in this complaint Cicchiello appears to seek to hold a state court judge, prosecutors, and various courthouse employees personally liable to her for damages. To the extent that the plaintiff wishes to hold these state judicial employees and prosecutors personally liable for civil rights violations, based upon their actions litigating her state case, it is well-settled that these officials are individually cloaked with immunity from liability.

The United States Supreme Court has long recognized that officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who

perform adjudicative functions, <u>Imbler</u>, 424 U.S. at 423 n.20 (grand jurors); <u>Harper v. Jeffries</u>, 808 F.2d 281, 284 (3d Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

These longstanding common law immunities for judicial officials directly apply here and prevent the plaintiff from maintaining this civil action for damages against the individual judges she has named in her complaint, who are clearly entitled to judicial immunity for their actions presiding over this case and sentencing the plaintiff. <u>See, e.g.</u>, <u>Arsad v. Means</u>, 365 F. App'x 327 (3d Cir. 2010); <u>Figueroa v. Blackburn</u>, 208 F.3d 435 (3d Cir. 2000). In this regard, we have recently noted the broad scope of this immunity, stating:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.' " <u>Figueroa v. Blackburn</u>, 208 F.3d 435, 440 (3d Cir.2000) (quoting <u>Mireles v. Waco</u>, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing <u>Randall v. Brigham</u>, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." <u>Id.</u> (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," <u>Stump v. Sparkman</u>, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" <u>Goldhaber v. Higgins</u>, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." <u>Mireles</u>, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09-922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010) aff'd, 447 F. App'x 397 (3d Cir. 2011).

Moreover, the complaint also fails to state a claim with respect to the state prosecutors named in this pleading. While the nature of Cicchiello's precise claim against the district attorney and assistant district attorney is difficult to discern, it appears that the plaintiff is suing these prosecutors for the very act of prosecuting her. This she may not do. It is well-settled that a criminal defendant may not sue prosecutors for their act of filing charges against her since such conduct is cloaked in immunity from civil liability. The immunity conferred upon prosecutors for the quasi-judicial act of filing and bringing criminal charges is broad and sweeping:

> [T]he Supreme Court [has] held that state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role. This immunity extends to acts that are "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and ... presenting the State's case." Court has noted numerous public policy considerations underlying its extension of absolute immunity to prosecutors: [S]uits against prosecutors for initiating and conducting prosecutions "could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate"; lawsuits would divert prosecutors' attention and energy away from their important duty of enforcing the criminal law; prosecutors would have more difficulty than other officials in meeting the standards for qualified immunity; and potential liability "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." ... [T]here are other checks on prosecutorial misconduct, including the criminal law and professional discipline.

Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006)(citations omitted).

Here, we find that Cicchiello's complaint seeks to hold prosecutors personally liable for the act of prosecuting her. Since these officials are immune from personal, individual liability for any actions in bringing this case, Cicchiello's claims against these defendants should also be dismissed.

Finally, the scope of these protections extend beyond judges and prosecutors to those who take discretionary actions at the direction of the courts, like probation officers. As this court has observed:

> Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, also are immune from suit. See Gallas, 211 F.3d at 772-73 (court administrator entitled to immunity for release of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court direction, was immune from suit). The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir.1992). See also Johnson v. Kegans, 870 F.2d 992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants in the judicial process enjoy quasi-judicial immunity as well.").Quasi-judicial absolute immunity is available to those individuals, such as Defendants Kline and Brewer, who perform functions closely associated with the judicial process. Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971) (holding that quasi-judicial immunity applied to clerk of courts, an administrative assistant to the president judge and a court reporter); Henig v. Odorioso, 385 F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees executing judicial orders are immune from suit); Davis v. Philadelphia County, 195 F.Supp.2d 686 (E.D.Pa.2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and

court reporters).

Stout v. Naus, 09-390, 2009 WL 1794989, at 3 (M.D. Pa. 2009)(McClure, J.).

These longstanding common law immunities for judicial, quasi-judicial, and prosecutorial officials directly apply here and also prevent the plaintiff from maintaining this civil action for damages against the individual state court staff named as defendants in this complaint. See Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986)(probation officers entitled to quasi-judicial immunity for adjudicatory functions and qualified immunity for other functions). In short, since these officials are generally immune from liability for their roles in this criminal prosecution, probation revocation and sentencing, Cicchiello simply may not maintain an action against these officials and her claims against these defendants must be dismissed.

In sum, this merits analysis reveals that the defendants are entitled to judgment in their favor on all of Cicchiello's claims. Therefore, we find that a consideration of each of the Poulis factors calls for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in a profound way, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue

delay. <u>Alston v. Parker</u>, 363 F.3d  229, 235 (3d Cir. 2004).  In this case, the current complaint fails to state a viable civil rights cause of action, the factual and legal grounds proffered in support of this complaint make it clear that Cicchiello has no right to relief, and Cicchiello has declined to respond to court orders, or otherwise litigate these claims. On these facts, we conclude that granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore it is recommended that the complaint be dismissed without further leave to amend.

### III.  <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Defendants's Motions to Dismiss (Docs. 8 and 12), be GRANTED, the Plaintiff's Motion to Stay Probation (Doc. 10), be DENIED, and the Plaintiff's complaint against be dismissed as to all defendants for failure to prosecute pursuant to Rule 41. The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of

those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 28th  day of January, 2013.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge